UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VERONICA GRIMM,**

      **Plaintiff,**

   v.                                      **Civil Action 2:18-cv-1522**
                                               **Judge James L. Graham**
                                               **Magistrate Judge Chelsey M. Vascura**

**GPG PROCESSING, LLC,** *et al.***,**

      **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff, Veronica Grimm, moves for default judgment against Defendants, GPG Processing, LLC, d/b/a/ Revenue Management Group, LLC ("RMG"), and Gregory Hopkins (collectively, "Defendants"), for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq.*; the Ohio Corrupt Practices Act ("OCPA"), R.C. § 2923.21 *et seq.*; and Ohio common law. (ECF No. 22.) Plaintiff's Motion for Default Judgment was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (ECF No. 22.) For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Motion for Default Judgment be **GRANTED IN PART AND DENIED IN PART**.

        **I.    BACKGROUND**

Plaintiff resides in Steubenville, Ohio. (Am. Compl. at ¶ 4, ECF No. 3.) RMG is a debt collector operating out of Buffalo, New York and Rochester, New York. (*Id.* at ¶ 5.) Gregory Hopkins is the owner and principal officer of RMG. (*Id*. at ¶ 6.) Plaintiff alleges that Hopkins "regularly directs the business practices of" RMG and that, at all times relevant to this action, he

acted either personally or through his employees. (*Id.*) She further asserts that Hopkins is liable for all counts alleged against Defendant RMG. (*Id.*)

In 2016, Plaintiff discharged a payday loan in bankruptcy. (*Id*. at ¶ 12.) RMG contacted Plaintiff about the payday loan debt in early 2018, and she explained that the debt had been discharged in bankruptcy. (*Id*. at ¶¶ 11, 12.) Still, RMG insisted that the payday loan debt was due and owing to RMG. (*Id.* at ¶ 12.)

RMG continued to call Plaintiff a few times each month and stated that Plaintiff had a warrant out for her arrest due to her failure to pay on the debt. (*Id*. at ¶¶ 13, 14.) RMG accused Plaintiff of "fraud" and threatened her with criminal prosecution and civil lawsuits. (*Id.* at ¶¶ 15, 16.) RMG also falsely stated that it had already filed lawsuits against Plaintiff. (*Id.* at ¶ 16.) When Plaintiff informed RMG that she had not been served with papers regarding a lawsuit, it "falsely told Plaintiff that under Ohio law, RMG was not required to serve her with any complaints filed against her" and that it would proceed in the lawsuit without her. (*Id.* at ¶ 17.) RMG had no intention to follow through with its threats of a lawsuit. (*Id.* at ¶ 18.)

Plaintiff was anxious about the threats and made payments towards the payday loan totaling $1,116.88. (Mot. for Default J. at ¶ 2, ECF No. 22.) Specifically, she made payments to RMG in the amount of $201.88 on February 13, 2018; $400.00 on February 13, 2018; and $515.00 on April 26, 2018. (Am. Compl. at ¶¶ 19, 20, 26, ECF No. 3.) RMG continued to call Plaintiff and state that the full balance of the loan was due and owing despite the fact that she had made payments and that the loan had been discharged in bankruptcy. (*Id.* at ¶ 24, 27.) RMG also continued to threaten Plaintiff with arrest, prosecution, and civil lawsuits. (*Id.* at ¶ 25.) Further, RMG called Plaintiff's relatives, informed them of the alleged debt, and told them that Plaintiff had committed criminal check fraud. (*Id.* at ¶ 28.) Additionally, RMG never provided

Plaintiff with any written notices concerning the debt. (*Id*. at ¶ 33.) Plaintiff asserts that she "refused to continue paying on the debt," and "[i]n response, on information and belief, RMG transferred Plaintiff's account to Oconnor," another debt collector. (*Id.* at ¶¶ 29-30.)

Plaintiff alleges that because of RMG's actions, she felt anxious, was unable to sleep, had her family life disrupted, and compulsively checked the police department's website for warrants in her name. (Mot. for Default J. at 3, ECF No. 22; Decl. of Pl., ECF No. 22-1.)

Plaintiff commenced this action on November 26, 2018. (ECF No. 1.) She filed her Amended Complaint on December 6, 2018. (ECF No. 3.) The Clerk entered default against RMG on February 20, 2019, and against Gregory Hopkins on April 4, 2019. (ECF Nos. 14, 19.) All other Defendants have been dismissed from this case. (*See* Order, ECF No. 21; Notice, ECF No. 4.) On April 24, 2019, Plaintiff moved for default judgment against Defendants RMG and Hopkins on her claims under the FDCPA, RICO, OCPA, and Ohio common law. (ECF No. 22.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 provides that "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Subsequently, unless a claim is for a sum certain or a sum that can be made certain by computation, plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). "Even if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Anderson v. Johnson*, No. 98-1931, 1999 WL 1023753, at * 2 (6th Cir. Nov. 4, 1999) (citing *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992)). In considering a motion for default judgment, all "factual allegations of the complaint,

3

except those related to the amount of damages, will be taken as true." *Harris v. Cooley,* No. 1:17-CV-540, 2019 WL 1573260, at *1 (S.D. Ohio Apr. 11, 2019). If the defaulting party is found liable for the cause of action, that "does not resolve issues relating to damages." *Antione v. Atlas Tucker, Inc.* 66 F.3d 105, 111 (6th Cir. 1995). Under Federal Rule of Civil Procedure 55, if the amount of damages is unclear "the court may conduct hearings or make referrals" in order to "determine the amount of damages." Fed. R. Civ. P. 55(b)(2).

### III.   ANALYSIS

#### A.   Fair Debt Collection Practices Act (FDCPA) Claims

Plaintiff first contends that Defendants violated the FDCPA. "The Fair Debt Collection Practices Act generally prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011) (citing 15 U.S.C. § 1692e). "Section 1692k of the statute allows the consumer to recover statutory or actual damages for violations of the Act." *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323, 326 (6th Cir. 2012). In order to establish a claim under the FDCPA, "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise[ ] out of transactions which are 'primarily for personal, family or household purchases;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated" the FDCPA's prohibitions. *Id.* (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp. 914, 926 (N.D. Ohio 2009)).

Here, Plaintiff has set forth sufficient facts to establish her claims under the FDCPA. First, Plaintiff has shown that she is a "consumer" as defined by the Act. "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiff is a consumer because she is a natural person who is allegedly obligated to pay a debt owed on a payday loan. She has also pled that the "debt," *i.e.* the payday loan,

4

constitutes a debt used for personal purposes. (Am. Compl. ¶ 38, ECF No. 3.) Next, she adequately pled that Defendants are "debt collectors" as defined by the FDCPA. A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA applies to Defendants RMG and Hopkins because the principal purpose of their business is to collect debts and they use the instrumentalities of interstate commerce to do so. 15 U.S.C. § 1692a(6); (*see also* Am. Compl. ¶¶ 36-37, ECF No. 3). Plaintiff also alleges sufficient facts to show that Defendants violated several provisions of the FDCPA. The undersigned will consider Plaintiff's allegations under the FDCPA in turn.

1. **15 U.S.C. § 1692c(b)**

Plaintiff first alleges that Defendants violated 15 U.S.C. § 1692c(b), which provides as follows:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

15 U.S.C. § 1692c(b). 15 U.S.C. § 1692b provides an exception if the communication is "for the purpose of acquiring location information about the consumer," but provides that a debt collector shall "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2).

Here, Plaintiff sufficiently alleges that Defendants violated 15 U.S.C. § 1692c(b) when they contacted her relatives and stated that she owed a debt. (Am. Compl. ¶¶ 41-42, ECF No. 3.) The exception does not apply because Defendants had adequately located Plaintiff as

5

demonstrated by their frequent communications with her. Based on the allegations in the Amended Complaint, none of the other exceptions apply. Plaintiff asserts that the natural consequences of Defendants' actions was to harass, worry, and embarrass her. (*Id.* at ¶ 42.) It is therefore **RECOMMENDED** that the Court find Defendants liable for violation of 15 U.S.C. § 1692c(b).

### 2. 15 U.S.C. § 1692e(2)

Plaintiff also alleges that Defendants violated 15 U.S.C. § 1692e(2), which prohibits the "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "Whether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on whether the 'least sophisticated consumer' would be misled by defendant's actions." *Wallace*, 683 F.3d at 326 (citations omitted).

Plaintiff alleges that Defendants violated § 1692e(2)(A) when their agent insisted that Plaintiff owed a debt on the payday loan after the debt had been discharged in bankruptcy and after she subsequently paid off the loan. (Am. Compl. ¶¶ 44-45, ECF No. 3.) Plaintiff alleges that she informed Defendants that the loan had been discharged, but they continued to insist the debt was due and owing. Additionally, Plaintiff alleges that Defendants misrepresented the character and legal status of the debt when they falsely stated that she could be liable for attorney's fees. (*Id.* at ¶ 46.) Plaintiff was misled by Defendants' representations, as she made additional payments on the debt despite the fact that it was discharged in bankruptcy. She also felt anxious, was unable to sleep, had her family life disrupted, and compulsively checked the police department's website for warrants in her name due to Defendants' threats. (Mot. for Default J. at 3, ECF No. 22; Decl. of Pl., ECF No. 22-1; Am. Compl. ¶ 46, ECF No. 3.)

Accordingly, it is **RECOMMENDED** that the Court find Defendants liable for a violation of 15 U.S.C. § 1692e(2).

   3. **15 U.S.C. § 1692e(4)**

Plaintiff alleges that Defendants violated 15 U.S.C. § 1692e(4), which prohibits the "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person . . . unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4). Plaintiff alleges that Defendants violated § 1692e(4) when they threatened her with arrest and conviction for "check fraud" if she did not make payments on the alleged debt. Because the debt had been discharged in bankruptcy, such actions are unlawful. (Am. Compl. ¶ 18, ECF No. 3.) Further, Plaintiff alleges, upon information and belief, that "RMG never had any real intention of filing civil suits or pressing criminal charges against Plaintiff," although she believed it did at the time. (*Id.*; Decl. of Pl. at ¶ 3, ECF No. 22-1.) Defendants' actions resulted in confusion, worry, and emotional distress for Plaintiff. (Am. Compl. ¶¶ 48-49, ECF No. 3.) Accordingly, the undersigned **RECOMMENDS** that the Court find Defendants liable for violation of 15 U.S.C. § 1692e(4).

   4. **15 U.S.C. § 1692g**

Plaintiff also asserts that Defendants violated 15 U.S.C. § 1692g(a). This section provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer written notice . . ." 15 U.S.C. § 1692g(a). Plaintiff alleges that Defendants did not provide proper notice within five days of the initial phone call. (Am. Compl. ¶ 51, ECF No. 3.) She further alleges that the "natural consequence of Defendants' inaction was to harass and oppress

Plaintiff and cause Plaintiff confusion, worry, and emotional distress." (*Id.* at ¶ 52.) It is therefore **RECOMMEDED** that the Court find Defendants liable for the violation of 15 U.S.C. § 1692g(a).

### 5. Summary of FDCPA Claims

In summary, the undersigned finds that Plaintiff has set forth sufficient facts to demonstrate that Defendants are liable for violations of §§ 1692c(b), 1692e(2), 1692e(4), and 1692g(a) of the FDCPA. The undersigned therefore **RECOMMENDS** that the Court **GRANT IN PART** Plaintiff's Motion for Default Judgment and enter judgment in Plaintiff's favor regarding Defendants' liability under the FDCPA. Plaintiff, however, has not clearly proven damages. Accordingly, the undersigned **RECOMMENDS** that the Court **DENY WITHOUT PREJUDICE** Plaintiff's Motion for Default Judgment as it relates to damages under the FDCPA and conduct an evidentiary hearing to determine the proper amount of damages.

## B.  Racketeer Influenced and Corrupt Organizations Act (RICO) Claim

Plaintiff next alleges a claim under RICO. "The civil RICO statute, 18 U.S.C. § 1964(c), creates a cause of action for '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962.'" *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Georgia*, 768 F. App'x 446, 453 (6th Cir. 2019). A plaintiff seeking to advance a civil RICO claim "must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex* Co., 473 U.S. 479, 496 (1985)).

Here, Plaintiff has not set forth sufficient facts to plead elements (3) and (4) of her RICO claim. "To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts

of racketeering activity occurring within a ten-year period." *Moon*, 465 F.3d at 723 (citing 18 U.S.C. § 1961(5)). Plaintiff alleges that Defendants committed the predicate acts of wire fraud under 18 U.S.C. § 1343 and extortion under Ohio Revised Code § 2905.11. (Am. Compl. ¶¶ 93-100, ECF No. 3.) Pursuant to 18 U.S.C. § 1343, a defendant may be liable for wire fraud as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses. . ., transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years.

18 U.S.C. § 1343. Ohio Revised Code § 2905.11 provides that a person is guilty of extortion if he does the following:

> (A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:
>
> \* \* \*
>
> (4) Utter or threaten any calumny against any person;
>
> (5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.

Ohio Rev. Code § 2905.11.

As a preliminary matter, Plaintiff has not sufficiently pled predicate acts of wire fraud. When pleading the predicate act of wire fraud, a plaintiff must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, which requires a plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (citations and internal quotation marks omitted); *see also Moon*, 465 F.3d at 723 (explaining that

"consistent with Rule 9(b), RICO plaintiffs must allege 'the time, place and contents of the misrepresentations'" (quoting *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (1984))).

Here, Plaintiff fails to specify the dates and times at which she received the allegedly fraudulent phone calls from Defendants. In the Amended Complaint, Plaintiff alleges that "[e]arlier this year, RMG contacted Plaintiff by telephone regarding this payday loan," and that RMG "continued to call her a few times per month, each time threatening her with arrest." (Am. Compl. ¶¶ 11, 13, ECF No. 3.) Plaintiff makes similarly vague allegations regarding the phone calls from Defendants throughout the Amended Complaint. (*See* Am. Compl. ¶¶ 11-29, ECF No. 3.) Additionally, in her declaration, Plaintiff asserts, without explanation or detail, that for "over two years" she has "been beaten down by the fear caused by the constant threats against [her] over [her] debts." (Decl. of Pl. ¶ 2, ECF No. 22-1.) Although Plaintiff provides the three dates on which she wired money to RMG, she fails to specify any time or date on which Defendants made allegedly fraudulent statements inducing such payment. Under these circumstances, Plaintiff has not adequately pled predicate acts of wire fraud. *See, e.g.*, *Heinrich*, 668 F.3d at 405 (finding that the plaintiff failed to sufficiently allege wire fraud where her affidavit "does not include the date she received the allegedly fraudulent email from the defendants").

Plaintiff has, however, adequately plead at least two instances of extortion. In an effort to get Plaintiff to pay on the alleged debt, Defendants threatened Plaintiff with arrest and called her relatives stating that she had committed check fraud. Defendants continued to threaten Plaintiff after she explained that the debt had been discharged in bankruptcy. (Am Compl. ¶¶ 11-12, ECF No. 12.) Plaintiff asserts that she "was so scared of arrest that she made payment to RMG" on February 13, 2018, in the amounts of $201.88 and $400.00. (Am. Compl. ¶¶ 19-20, ECF No.

3.) She alleges that again, on April 26, 2018, she was "scared of arrest and made a payment of $515.00 to RMG." (*Id.* at ¶ 26.) Defendants' actions constitute extortion under Ohio Revised Code § 2905.11.

Nonetheless, because Plaintiff failed to properly allege any predicate acts of wire fraud and has only alleged three acts of extortion over a 2.5-month period, the undersigned is not persuaded that Plaintiff has shown a pattern of racketeering activity. To establish a pattern of racketeering activity under RICO, the plaintiff must show that the predicate acts are "related, and that they amount to or pose a threat of continued criminal activity." *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). This is called the "relationship plus continuity test." *Id*. The relationship prong of the test "is satisfied if the predicate acts have 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Aces High Coal Sales, Inc.*, 768 F. App'x at 454 (quoting *H.J. Inc.*, 492 U.S. at 240 (quoting 18 U.S.C. § 3575(e))). Continuity of the racketeering activity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H. J. Inc.*, 492 U.S. at 241. Here, the alleged predicate acts are related, as they had the same or similar methods of commission and the common purpose of inducing Plaintiff to pay on the alleged debt. Nevertheless, Plaintiff has not demonstrated continuity of the racketeering activity.

First, Plaintiff's allegations are insufficient to demonstrate a closed period of continuity. "A closed period of continuity may be demonstrated 'by proving a series of related predicates extending over a substantial period of time.'" *Moon*, 465 F.3d at 724 (quoting *H.J., Inc.*, 492 U.S. at 240). "Although there are no rigid rules regarding what amounts to 'a substantial period

11

of time,' racketeering activity lasting only 'a few weeks or months and threatening no future criminal conduct' is insufficient." *Id.* at 725 (citations omitted). Here, Plaintiff adequately pled only three instances of extortion over a 2.5 month period, which is insufficient to demonstrate a pattern of racketeering activity. Her allegations of wire fraud cannot establish a pattern because she fails to set forth the dates on which the alleged wire fraud began and ended. The vague allegations in the Amended Complaint appear to suggest that Defendants' phone calls began in early 2018 and that her "debt" was transferred to another company, Oconnor Corporation, in November 2018. (Am. Compl. at ¶¶ 11, 30, ECF No. 3.) She has not provided the specific dates or times of the calls, and also fails to allege the total number of threatening calls she received from Defendants. This information should be available to Plaintiff, yet she did not provide it to the Court. Instead, Plaintiff specifies only the three dates on which she made payments to RMG, which does not shed light on the dates or consistency at which Defendants engaged in alleged wire fraud. In short, Plaintiff has not alleged sufficient facts from which the undersigned could conclude that Defendants engaged in a series of predicate acts over a substantial period of time.

Plaintiff likewise fails to allege facts demonstrating an open-period of continuity. "This inquiry turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projecting into the future." *Moon*, 465 F.3d at 726. Open-ended continuity may be pleaded by showing "'a distinct threat of long-term racketeering activity,' or by showing 'that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Id.* at 726-27 (quoting *H.J., Inc.*, 492 U.S. at 242). In her Amended Complaint, Plaintiff alleges that, upon information and belief, RMG transferred her account to Oconnor Corporation around November 2018. (Am. Compl. ¶¶ 29-30, ECF No. 3.) Thus, she has not plausibly alleged a distinct threat of long-term racketeering activity from Defendants.

12

She also has not alleged that wire fraud and extortion are part of Defendants' regular way of doing business or that they have engaged in such practices with other debtors. Under such circumstances, Plaintiff has not set forth sufficient facts demonstrating open-ended continuity.

In summary, Plaintiff fails to sufficiently allege a "pattern of racketeering activity." Accordingly, the undersigned **RECOMMENDS** that her Motion for Default Judgment be **DENIED** as to her RICO claims.

C.     **Ohio Corrupt Practices Act (OCPA) Claim**

Plaintiff also alleges a claim under the OCPA. The OCPA is modeled after the federal RICO Act, *State v. Beverly*, 143 Ohio St.3d 258, 259, 37 N.E. 3d 116, 117 (Ohio 2015), and provides in relevant part as follows: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Ohio Rev. Code § 2923.32(A)(1). In order to prove a claim under the OCPA, Plaintiff must show "(1) that the conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of an enterprise." *Hall v. CFIC Home Mtg.,* 175 Ohio App. 587, 597, 888 N.E.2d 469, 477 (Ohio App. 2008). "In view of these requirements, a plaintiff that fails to plead the elements necessary to establish a RICO violation also fails to state a claim under the OCPA." *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013). Indeed, as with a federal RICO claim, the Ohio Supreme Court has held that a "pattern of corrupt activity" under the OCPA "must include both a relationship and continuous activity." *State v. Miranda*, 2014-Ohio-451, ¶ 13, 138 Ohio St. 3d 184, 188, 5 N.E.3d 603, 607 (Ohio 2014) (citations and internal quotation marks omitted)

(emphasizing that the intent of the OCPA is "to criminalize the pattern of criminal activity, not the underlying predicate acts").

As set forth above, Plaintiff failed to sufficiently allege the predicate offenses of wire fraud and to demonstrate a pattern of corrupt activity. Accordingly, Plaintiff has not alleged facts showing that Defendants are liable under the OCPA. *See Ogle*, 924 F. Supp. 2d at 913 (finding plaintiffs failed to state a claim under the OCPA where they failed to plead the necessary elements of a RICO claim). The undersigned therefore **RECOMMENDS** that Plaintiff's Motion for Default Judgment be **DENIED** as to her OCPA claims.

**D.    Invasion of Privacy Claim**

Plaintiff next asserts a claim under Ohio common law for invasion of privacy. Invasion of privacy under Ohio law is the "wrongful intrusion into one's private activities in such a manner as to outrage or to cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Housh v. Peth,* 165 Ohio St. 35, 39, 133 N.E. 2d 340, 343 (Ohio 1956). In *Housh*, the Ohio Supreme Court recognized that a "creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy." *Id.* at 40. The *Housh* Court ultimately found that the conduct of the creditor fell outside of the bounds of reasonable methods that may be pursued to collect a debt. *Id.* at 41. The Ohio Supreme Court explained as follows:

> The record shows that the defendant deliberately initiated a systematic campaign of harassment of the plaintiff, not only in numerous telephone calls to the plaintiff herself every day for a period of three weeks, some of which were late at night, but also calls to her superiors over the telephone, informing them of the debt; that she was called out of the classroom in the public schools where she was employed three times within 15 minutes; that she lost a roomer at her rooming house because of the repeated calls, and was threatened with loss of employment unless the telephone calls ceased. The calls to the employer, and the rooming house, were all part of the pattern to harass and humiliate the plaintiff and cause her mental pain and anguish and cause her emotional disturbance for the purpose of

14

> coercing her to pay the debt. The jury [h]ad a right to conclude that the defendant committed such acts maliciously. As a result of the conduct of the defendant the plaintiff became ill. In our opinion the conduct of the defendant falls outside the bounds of reasonable methods which may be pursued in an effort to collect a debt, and is actionable as an invasion of plaintiff's right of privacy.'

*Id.* at 41.

Additionally, in addressing an invasion of privacy claim under Ohio law, the Sixth Circuit has explained that

> When considering whether a defendant's telephone calls to the plaintiff are offensive or outrageous enough to support an actionable claim of invasion of privacy, Ohio courts have looked to a number of different factors, including the number of calls, the content of the calls, the time of day that the calls were made, and whether the calls were accompanied by other contacts with the plaintiff.

*Charvat v. NMP, LLC*, 656 F.3d 440, 453 (6th Cir. 2011).

Here, Plaintiff has sufficiently alleged facts demonstrating that Defendants are liable for invasion of privacy. Defendants repeatedly called Plaintiff regarding a non-existent debt, as the payday loan had been discharged in bankruptcy. Under such circumstances, it was unreasonable for Defendants to continue to call Plaintiff a few times per month and threaten her with civil litigation and criminal prosecution if she did not pay on the debt. Defendants' actions are particularly egregious because Plaintiff explained to RMG that the debt had been discharged in bankruptcy. Further, RMG falsely told Plaintiff there was a warrant for her arrest, that she had committed fraud, and that it had filed lawsuits against her. Additionally, Defendant RMG called Plaintiff's relatives and informed them of the alleged debt and stated that Plaintiff had committed criminal check fraud. As a result of these actions, Plaintiff made payments on the non-existent debt, felt anxious, was unable to sleep, had her family life disrupted, and compulsively checked the police department's website for warrants in her name. Although the number of calls and times at which they were made is not clear, Defendants' actions fall outside of the bounds of

15

reasonable conduct and constitute invasion of privacy.  It is therefore **RECOMMENDED** that

the Court **GRANT IN PART** Plaintiff's Motion for Default Judgment and enter judgment in

Plaintiff's favor regarding Defendants' liability for invasion of privacy.  Because Plaintiff has

not adequately proven damages, the undersigned **RECOMMENDS** that the Court **DENY**

**WITHOUT PREJUDICE** Plaintiff's Motion for Default Judgment as it relates to damages for

invasion of privacy and conduct an evidentiary hearing to determine the proper amount of

damages.

**E.     Defamation Claim**

Plaintiff also asserts a defamation claim under Ohio common law.  To prove defamation,

plaintiff must demonstrate the following elements:

> (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Am. Chem. Soc'y v. Leadscope, Inc.,* 133 Ohio St. 3d 366, 389, 978 N.E. 2d 832, 852 (Ohio

2012) (quoting *Pollock v. Rashid,* 117 Ohio App. 3d 361, 368, 690 N.E. 2d 903, 908 (Ohio Ct.

App. 1996)).

Plaintiff has set forth facts demonstrating that Defendant RMG is liable for defamation.

First, Defendant RMG made a false statement about Plaintiff when it stated to Plaintiff's

relatives that she had committed criminal check fraud.  This statement is defamatory *per se*.

"Spoken words accusing a person of committing a crime are slanderous per se only if the crime

is one of moral turpitude."  *Northeast Ohio Elite Gymnastics Training Ctr. v. Osborne*, 183 Ohio

App.3d 104, 109, 916 N.E. 2d 484, 487 (Ohio App. 2009).  Here, Defendant RMG falsely stated

that Plaintiff committed check fraud, a crime of moral turpitude.  *See Yeremin v. Holder*, 738

F.3d 708, 714 (6th Cir. 2013) ("Crimes that involve deception or fraud consistently are held to

16

qualify as crimes involving moral turpitude."). Next, Defendant RMG published the defamatory statement when he stated it to Plaintiff's relatives. *See Strafford v. Jewelers Mut. Ins.,* 554 F. App'x 360, 375 (6th Cir. 2014) (explaining that published means that the statement must have been made to someone who is not the plaintiff). Plaintiff suffered injuries proximately caused by RMG's publication of the defamatory statement, as she alleges that it directly resulted in her suffering humiliation in her family life. Finally, Defendant RMG acted with the requisite degree of intent because it knowingly made such false statements to Plaintiff's relatives. Accordingly, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's Motion for Default Judgment as it relates to liability against Defendant RMG for defamation. Because Plaintiff makes no defamation allegations against Defendant Hopkins in her Amended Complaint, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Motion for Default Judgment as to Plaintiff's defamation claim against Defendant Hopkins. It is further **RECOMMENDED** that the Court **DENY WITHOUT PREJUDICE** Plaintiff's request for damages for defamation at this juncture and conduct an evidentiary hearing to determine the proper amount of damages.

## IV. DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion for Default Judgment be **GRANTED IN PART AND DENIED IN PART** (ECF No. 22). It is **RECOMMENDED** that the Court (1) **ENTER DEFAULT JUDGMENT** against Defendants RMG and Hopkins, on liability only, for violation of the FDCPA and invasion of privacy; (2) **ENTER DEFAULT JUDGMENT** against Defendant RMG, on liability only, for defamation; (3) **DENY WITHOUT PREJUDICE** Plaintiff's Motion for Default Judgment as it relates to damages for violation of the FDCPA, invasion of privacy, and defamation and conduct an evidentiary hearing to determine the proper amount of damages; and (4) **DENY** Plaintiff's Motion for Default Judgment as it relates to her RICO and the OCPA claims.

17

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE